UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SARA GRIMES,

        **Plaintiff,**

v.                                      Case No:   6:14-cv-244-Orl-28KRS

**THE STATE OF FLORIDA,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS (Doc. No. 2)** |
| **FILED:** | **February 12, 2014** |

**I.    BACKGROUND.**

      On February 12, 2014, Plaintiff, Sara Grimes, filed a lawsuit against the State of Florida, alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), as well as violations of the Fifth and Fourteenth Amendments to the U.S. Constitution. Doc. No. 1. Grimes's allegations are discussed in more detail below, but, generally, she alleges that a state trial court violated the ADA and her due process rights by refusing her disability accommodation requests during litigation of a personal injury suit and that the Florida Supreme Court violated her due process rights by refusing to accept jurisdiction over her appeal from a *per*

*curiam* affirmance issued by a Florida District Court of Appeal ("DCA"). Grimes seeks relief on her own behalf and to represent a class of individuals who are alleged to be similarly situated.

Grimes also filed a motion to proceed *in forma pauperis*. Doc. No. 2.

## II. ALLEGATIONS OF THE COMPLAINT.

Construing Grimes's *pro se* Complaint liberally, she alleges that she is a resident of Florida and suffers from hand and spinal medical disabilities. Doc. No. 1 ¶ 1. She states that, in 2007, her attorney filed a personal injury lawsuit on her behalf in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida. *Id.* ¶ 9. In 2008, her attorney withdrew from the case, and Grimes was forced to proceed *pro se*. *Id.* In 2010, Grimes requested a postponement of a hearing because she was suffering from medical problems. *Id.* ¶ 10. She filed her request for a postponement with the state court in compliance with the ADA Title II Guidelines for the State Court System of Florida, which require that requests for an extension of time be submitted by written motion to the presiding judge as part of the case. *Id.* ¶¶ 11-13. The state court judge denied the motion without comment. *Id.* ¶ 14.

Thereafter, Grimes filed more than thirty (30) additional accommodation requests, whereby she requested continuances, the ability to participate in hearings via telephone, and the appointment of counsel and a court reporter. She supported these requests with medical documentation, but the trial court failed to grant any of the requests. Doc. No. 1 ¶¶ 15-30. The state court judge never conferred with the court's disability coordinator and consistently failed to provide reasons for the decisions or to address the possibility of alternative accommodations. *Id.*

Because the state court judge denied Grimes's accommodation requests, Grimes was forced to travel back and forth between Orlando and Miami in May and June 2011 so that she could attend both scheduled medical appointments and required court appearances. This travel

was difficult for Grimes.  Doc. No. 1 ¶¶ 32-37.  Grimes missed a court meeting on June 13, 2011 because of her disability problems.  *Id.* ¶ 38.  The court held a show cause hearing related to Grimes's missed court appearance on June 20, 2011.  At the hearing, Grimes submitted doctor's notes and records describing her medical condition, but the state court judge returned them without comment.  *Id.* ¶ 39.  On September 27, 2011, the state court dismissed Grimes's case as a sanction.  *Id.* ¶ 40.  The state court acknowledged Grimes's pleas for disability consideration in its dismissal order, but did not rely on any expert's opinion.  Instead, it found that Grimes appeared fine and acted willfully.  *Id.* ¶ 41.

Grimes filed a timely appeal to the appropriate DCA in October 2011.  She requested the assignment of a disability coordinator.  Doc. No. 1 ¶ 42.  On October 16, 2012, the DCA issued a *per curiam* affirmance ("PCA") of the state court judgment, denying Grimes's appeal without comment.  The DCA did not assign a disability coordinator as Grimes had requested.  *Id.* ¶ 43.  Grimes then filed a motion with the DCA requesting a written opinion and requesting that the DCA certify the case as presenting a question of great public importance.  The DCA interpreted the motion as a motion for a rehearing and denied it without written explanation.  The DCA issued its mandate on November 19, 2012.  *Id.* ¶¶ 45-47.

On November 15, 2012, Grimes mailed a brief to the Florida Supreme Court, entitled "Special Writ Requesting Appellate Review of an Important Issue of Public Policy."  Grimes characterizes this motion as a motion for mandamus that requested an order requiring the lower state courts to use a disability coordinator.  Doc. No. 1 ¶¶ 49-50.  Two days later, Grimes also filed a timely appeal of the DCA's decision.  *Id.* ¶ 52.  On January 30, 2013, the Florida Supreme Court refused jurisdiction of both the writ of mandamus and the appeal of the DCA's PCA of the trial court's dismissal of Grimes's personal injury action.  The Florida Supreme Court refused

jurisdiction because it took the position that, under Florida law, a PCA decision without comment is not reviewable by the Florida Supreme Court. *Id.* ¶ 54.

With the Complaint, Grimes pursues two causes of action, one for violations of Title II of the ADA and one for violation of her rights under the Fifth and Fourteenth Amendments. With respect to the alleged ADA violations, Grimes contends that the state court's handling of her accommodation requests violated the ADA. Doc. No. 1 ¶¶ 133-137. Grimes alleges that she has repeatedly raised the argument that her rights under the ADA had been violated in the underlying state court litigation, including raising this argument to the state trial court, the DCA, and the Florida Supreme Court. *Id.* ¶¶ 61, 101-02, 107-08, 112. With respect to the alleged constitutional violations, Grimes alleges that the refusal to review a PCA constitutes a violation of her due process rights. *Id.* ¶¶ 66, 139-141. She also appears to allege that the state court's handling of her accommodation requests amounted to a denial of due process and an equal protection violation. *Id.* ¶¶ 25, 127.

In addition to seeking relief for Grimes individually, the Complaint is styled as a putative class action complaint, with Grimes seeking to represent one class consisting of "all qualified individuals with a disability needing the services of the judicial division of the State of Florida and its political subdivisions" and one class consisting of "all qualified individuals who have been denied review of their court decisions by the Florida Supreme Court because of a per curiam affirmed decision (["PCA"]) issued by a Florida District Court of Appeals (["DCA"]) even though the decision was in conflict with another DCA." Doc. No. 1. ¶ 1. Grimes asks the Court to award her compensatory damages, including the damages she would have recovered in the state court lawsuit if it had not been dismissed. *Id.* ¶ 151. She also seeks a declaratory judgment and injunctive relief (1) compelling the State of Florida to comply with the provisions of the ADA, the

Fifth Amendment, and the Fourteenth Amendment; (2) compelling the State of Florida to do a survey of all counties in the State to determine if they fully comply with the ADA and, if they do not, joining them as party defendants and compelling them to comply with the ADA; (3) and requiring the State of Florida to amend its interpretation of its laws to allow the Florida Supreme Court to review PCA decisions issued by DCAs. *Id.* ¶¶ 153-54.

**III. APPLICABLE LAW.**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), when a plaintiff seeks to proceed *in forma pauperis*, the Court is required to consider whether the plaintiff's complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See also* Local Rule 4.07; *Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) (Lay, J., concurring) ("Section 1915(e) applies to all [*in forma pauperis*] litigants – prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories."). To state a claim upon which relief may be granted, a plaintiff's complaint must contain sufficient factual allegations to bring her claims "across the line from conceivable to plausible" and her factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted). A complaint is frivolous within the meaning of § 1915(e)(2)(b), if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal on grounds of frivolity may be appropriate if the district court sees that an affirmative defense – such as absolute immunity – would defeat the action. *See Clark v. St. of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 & n. 2 (11th Cir. 1990) (collecting cases).

Additionally, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, a district court may at any time, upon motion or *sua sponte*, act to address the potential lack of subject matter jurisdiction in a case. *Herskowitz v. Reid*, 187 F. App'x 911, 912-13 (11th Cir. 2006) (citing *Howard v. Lemmons*, 547 F.2d 290, 290 n.1 (5th Cir. 1977)). "[I]t is incumbent upon federal courts trial and appellate to constantly examine the basis of jurisdiction, doing so on our own motion if necessary." *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) (citations omitted). Federal courts are courts of limited jurisdiction; therefore, the Court must inquire into its subject matter jurisdiction, even when a party has not challenged it. *See, e.g., Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

**IV. ANALYSIS.**

Grimes's Complaint is due to be dismissed. I discuss her ADA and constitutional claims separately, below.

*A. Title II of the ADA.*

With her Complaint, Grimes asks the Court to find the state court violated the ADA with respect to how it handled her accommodation requests during her personal injury lawsuit. She also seeks injunctive relief compelling the State of Florida (and, potentially, also its counties) to comply with the ADA. As noted above, the Court must first consider whether it has subject matter jurisdiction to hear these claims. I recommend that the Court find that it lacks subject-matter jurisdiction over Grimes's ADA claims for the reasons discussed below.

1. <u>State Court Violation of the ADA</u>.

The essence of Grimes's ADA claims is that the state trial court violated the ADA by denying her accommodation requests, which ultimately led to the dismissal of her lawsuit.[1] Such

---

[1] Grimes's Complaint is somewhat unclear, but, even keeping in mind the Court's duty to construe her *pro se* Complaint liberally, I construe her Complaint as alleging that the state trial court violated the

claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state-court judgments." *Alvarez v. Attorney Gen.*, 679 F.3d 1257, 1262 (11th Cir. 2012) (citation omitted). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S 280, 284 (2005)). More specifically, it applies to cases that are "inextricably intertwined with the state-court judgment so that (1) the success of the federal claim would effectively nullify the state-court judgment, or that (2) the federal claim would succeed only to the extent that the state court wrongly decided the issues." *Id.* (internal quotations and citation omitted).

In this case, Grimes complains of injuries caused by a state-court judgment that she contends was incorrect. Specifically, she complains about the state court's failure to grant her

---

ADA when it denied her various accommodation requests, not that there were additional violations of the ADA during her appeal of the state trial court's dismissal of her case. Although the factual allegations of Grimes's Complaint mention that the DCA failed to appoint a disability coordinator, it appears that Grimes is alleging that the failure to appoint a disability coordinator for non-attorneys is a violation of due process and equal protection, not the ADA. Doc. No. 1 ¶¶ 23-25. Moreover, the ADA Count of her Complaint focuses on the "consistent insistence in continuing the Plaintiff's case, without delay and despite the Plaintiff's inability to participate without accommodations," which appears to refer to the state trial court's handling of her case, not the DCA's handling of the case. Doc. No. 1 ¶ 136. To the extent Grimes is attempting to assert that the ADA was also violated by the DCA's failure to appoint a disability coordinator, such a claim may be barred by the *Rooker-Feldman* doctrine for the same reason her complaints about the state trial court's handling of her case are barred. Moreover, even if complaints about the DCA's handling of her appeal are not barred by the *Rooker-Feldman* doctrine, they are due to be dismissed for failure to state a claim upon which relief can be granted. Grimes does not allege that she needed the disability coordinator she requested at the appellate level, that she needed or requested any particular accommodations at the appellate level, or that the DCA's failure to appoint a disability coordinator harmed her in any way. Without such factual allegations as they relate to the DCA phase of her case, Grimes has not, as she must, alleged facts making it plausible that she was "excluded from participation in or . . . denied the benefits of the services, programs or activities of a public entity" or otherwise "discriminated [against] by such entity." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132).

disability accommodation requests and its ultimate dismissal of her case, which Grimes alleges was a direct result of the state court's failure to accommodate her disability as the ADA requires. Grimes's Complaint makes it abundantly clear that her argument that the state court was violating the ADA was made to the state trial court, the DCA, and the Florida Supreme Court. As is evident from the procedural history of this case, Grimes's ADA arguments were rejected by the state trial court and the DCA before the instant federal lawsuit was commenced. Grimes's ADA claim would succeed only to extent that these state-court decisions were wrong – that is, Grimes will only win in this case if the state courts were wrong when they rejected her arguments that the ADA required them to grant her accommodation requests. Accordingly, this Court lacks jurisdiction over Grimes's ADA claims under the *Rooker-Feldman* doctrine, and these claims are due to be dismissed without prejudice.

    2. <u>Injunctive Relief</u>.

Portions of Grimes's Complaint also seem to allege generally that the manner in which the state courts handle accommodation requests violates the ADA, separate and apart from any violations that occurred in her personal injury lawsuit. In this vein, Grimes asks the Court for an injunction compelling the State of Florida to comply with the ADA going forward and compelling the State of Florida to do a survey of all the counties to see if they comply with the ADA and, if not, to join them as party defendants and compel them to comply with the ADA. It is not clear if this is intended to be a claim that is separable from her claim relating to the damages she suffered as a result of the state court's handling of her personal injury lawsuit. To the extent it is, Grimes lacks standing to pursue such injunctive relief, and the claim is due to be dismissed without prejudice for lack of subject matter jurisdiction.

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate–as opposed to a merely conjectural or hypothetical–threat of *future* injury." *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1284 (11th Cir. 2001) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)). In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless she alleges facts giving rise to an inference that she will suffer future discrimination by the defendant. *Shotz*, 256 F.3d at 1081 (collecting cases). Here, Grimes does not allege a real and immediate threat of future discrimination. The Complaint details only past incidents of discrimination and makes it clear that Grimes's state court personal injury lawsuit has concluded. Grimes does not allege that she is currently involved in litigation or that she intends or is likely to be involved in litigation– and thus, potentially require accommodation by the Florida state courts–in the future.[2] Absent such factual allegations, "the likelihood of future discrimination remains 'conjectural, hypothetical, or contingent,' and not 'real and immediate.'" *Id.* (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)) (holding that plaintiffs lacked standing to seek injunctive relief under Title II of the ADA because all of the alleged harm occurred in the past, plaintiffs had not attempted to return to the courthouse, and they had not alleged that they intended to do so in the future).

B. *Constitutional Claims.*

In addition to her ADA claims, Grimes alleges that the State of Florida has violated the Fifth and Fourteenth Amendments, both by the handling of her accommodation requests and by the Florida Supreme Court's refusal to review the DCA's PCA of the state trial court's dismissal

---

[2] Read against this factual backdrop, Grimes's vague and conclusory allegation that she "is . . . in need of the services of the judicial division of the State of Florida and its political subdivisions" (Doc. No. 1 ¶ 1) is not sufficient to give rise to an inference that there is a "real and immediate" threat of future discrimination.

of her lawsuit. Grimes does not cite specifically to 42 U.S.C. § 1983, but I construe her Complaint liberally as attempting to allege that she can recover under § 1983 because the State of Florida has violated her rights under the Fifth and Fourteenth Amendments.[3] Grimes's constitutional claims are due to be dismissed because the State of Florida is entitled to Eleventh Amendment immunity.[4]

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the plain language of the Eleventh Amendment only precludes federal courts from hearing cases brought against a state by citizens of another state, the U.S. Supreme Court has construed it to bar suits against a state brought by that state's own citizens as well. *See, e.g.*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted). Eleventh Amendment immunity from suit in federal court applies both when a plaintiff seeks damages against a state and when a plaintiff seeks injunctive relief against a state. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citations omitted). Thus, Grimes's constitutional claims are barred unless an exception to Eleventh Amendment immunity applies.

---

[3] This is the only possible avenue for Grimes to pursue her constitutional claims. There is no viable *Bivens*-like direct action against state and local actors for constitutional violations. Any such claim must be pursued under § 1983. *See Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982) (citations omitted).

[4] Eleventh Amendment immunity is a jurisdictional issue, and, if Eleventh Amendment immunity applies, a district court lacks jurisdiction. *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (citations omitted). However, unlike most jurisdictional issues, which cannot be waived and must be raised by the court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction. Instead, a federal court is required to consider whether Eleventh Amendment immunity strips it of jurisdiction only if a state defendant insists that it does. *Id.* at 1257 (citations omitted). In this sense, Eleventh Amendment immunity is similar to an affirmative defense.

Exceptions to Eleventh Amendment immunity exist if: (1) a suit seeks prospective injunctive relief to prevent an ongoing violation of the federal constitution against a state official in his or her official capacity; (2) if the state waives its immunity and consents to suit; or (3) if Congress validly abrogates the state's Eleventh Amendment immunity. *Svet v. Fla. Dep't of Juvenile Justice*, No. 2:11-cv-394-FtM-29SPC, 2012 WL 5188036, at *3 (M.D. Fla. Oct. 19, 2012) (citations omitted). None of these exceptions applies here. Grimes is not seeking prospective injunctive relief against a state official in his or her official capacity. She is suing the State of Florida itself. In addition, the State of Florida has not waived Eleventh Amendment immunity in § 1983 actions, *Spooner v. Dep't of Corrs.*, 514 So. 2d 1077, 1078 (Fla. 1987), and Congress has not abrogated the States' Eleventh Amendment immunity from § 1983 actions, *Williams v. Bd. of Regents*, 477 F.3d 1282, 1301 (11th Cir. 2007). Accordingly, Grimes's constitutional claims are barred by Eleventh Amendment immunity, and should be dismissed as frivolous within the meaning of § 1915. *See Benton v. Dep't of Juvenile Justice*, No. 6:14-cv-5-Orl-28KRS, Doc. No. 3 (M.D. Fla. Jan. 10, 2014), *adopted by* Doc. No. 4 (M.D. Fla. Feb. 4, 2014) (collecting cases and concluding that claim barred by Eleventh Amendment immunity should be dismissed as frivolous within meaning of § 1915).

C. *Leave to Amend.*

It is not entirely clear that Grimes will be able to cure the defects in her Complaint to state a claim that falls within this Court's jurisdiction. However, because Grimes is *pro se* and it is at least possible that she can cure the defects in her Complaint, I recommend that she be given leave to amend her claims. Any such amended complaint should not assert claims that are barred by the *Rooker-Feldman* doctrine, should include factual allegations showing that Grimes has standing

to pursue all of the relief requested, and should not name as defendants any entities or persons that are entitled to Eleventh Amendment immunity.

## V.     RECOMMENDATION.

Accordingly, I **RESPECTFULLY RECOMMEND** that the Court **DISMISS** Grimes's Complaint without prejudice; **ORDER** Grimes to file an amended complaint within a time specified by the Court following its ruling on this Report and Recommendation; and **DENY** Grimes's motion to proceed *in forma pauperis* (Doc. No. 2) without prejudice to refiling it with the amended complaint. Grimes should be advised that failure to file a proper amended complaint within the time specified by the Court may result in the case being closed without further notice.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 12, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy